MARGARET HOHNEKE KRAUSE, INDIVIDUALLY AND AS
PERSONAL REPRESENTATIVE OF THE ESTATE OF HERBERT
KRAUSE, DECEASED, APPELLANT, V. LAVERNE
CROSSLEY ET AL., APPELLEES.

277 N. W. 2d 242

Filed April 3, 1979.   No. 41930.

Kenneth M. Olds of Olds, Swarts & Ensz, for appellant.

B. B. Bornhoft, for appellees.

Heard before BOSLAUGH, BRODKEY, and HASTINGS, JJ., and CASE and FUHRMAN, District Judges.

CASE, District Judge.

This action started with a petition filed by Herbert Krause on October 8, 1976, against LaVerne Crossley and Natalie Smith as individuals and Natalie Smith as Administratrix CTA of the estate of Fred Kleensang. The petition alleged undue influence in the execution of a deed and will and prayed for the quieting of title to a described 160 acres of farmland in Wayne County, Nebraska.

The plaintiff departed this life on October 9, 1977, prior to trial and the action was revived in the name of Margaret Hohneke Krause as personal representative of the estate of the former plaintiff and in her individual capacity as the widow of Herbert Krause. Thereafter on October 27, 1977, the matter proceeded to trial to the court which entered a judgment on December 7, 1977, for the defendants.

The original plaintiff, Herbert Krause, and the defendants, Crossley and Smith, are brother and sisters, the plaintiff having lived with Mr. and Mrs. Fred Kleensang from 14 years of age to the time of the death of each of them. The defendant, LaVerne Crossley, had lived with the Kleensangs for a period of approximately 9 years prior to high school but had been a resident of California for approximately 40 years prior to the death of Fred Kleensang. Natalie Smith lived nearby in the village of Hoskins, Nebraska, and none of the parties were related by blood to the deceased.

Mrs. Kleensang died in August of 1971 devising the premises here in question to the plaintiff. Her surviving husband, Fred, made an election to take un-

der the statute and the real estate was assigned to the plaintiff and Fred Kleensang as tenants in common. Plaintiff and Fred Kleensang thereafter executed a deed on January 30, 1976, placing the premises in joint tenancy with right of survivorship. On the 19th of February 1976, 20 days later, Fred Kleensang, in the company of the defendant Crossley, executed another deed and a will, the deed being a standard warranty deed which purported to convey all of the grantor's interest in the jointly owned premises to himself as grantee. The will further devised the premises to Crossley and Smith with contingent devises which have no bearing on the issues here. Fred Kleensang died March 31, 1976.

With respect to the issue of undue influence, the law is well settled that the elements to be proved are: (1) That the individual was susceptible to such influence; (2) that the opportunity to exercise such influence existed; (3) that there was a disposition to exercise undue influence upon the individual; and (4) that the will or deed was the result of such undue influence. In re Estate of Goist, 146 Neb. 1, 18 N. W. 2d 513. We have closely examined the evidence here and fail to find any adequate proof that there was a disposition to exercise undue influence or that the documents were the result of such. In accordance with our holdings in McGowan v. McGowan, 197 Neb. 596, 250 N. W. 2d 234; and Loomis v. Estate of Davenport, 192 Neb. 461, 222 N. W. 2d 369, the burden of proof on the issue of undue influence is upon the party contesting the document. The proofs being absent, we are in agreement with the holdings of the District Court on this issue.

The plaintiff's petition prayed that the deed be set aside and canceled as a result of undue influence, further praying that the title be quieted and confirmed in the plaintiff. The appellees take the position that the only issue in this lawsuit is the question of undue influence and that the effect of the deed

executed by Fred Kleensang to himself was not raised by the pleadings.

We have previously held that a court has no power to decide questions except as presented by the parties in the pleadings. National Fire Ins. Co. v. Evertson, 153 Neb. 854, 46 N. W. 2d 489; and Drieth v. Dormer, 148 Neb. 422, 27 N. W. 2d 843. The issues then raised are: Did the trial court pass upon the legal effect of the deed from Fred Kleensang as grantor to himself as grantee and did this deed terminate the prior existing joint tenancy?

Our statute, section 25-21,115, R. R. S. 1943, governing pleadings in quiet title actions, provides in substance: "It shall be sufficient to allege generally in the petition that the defendants claim or appear to have some interest in, right or title to, * * * and it shall not be necessary to allege the nature of any adverse claim or that the value of plaintiff's title or estate is lessened thereby."

Here the plaintiff in his petition specifically sets out the execution of the deed in question and the prayer prays for the quieting of title in himself. The relief prayed for under the allegation of undue influence was to set aside the deed.

The scrivener who was a witness was specifically asked by the court: "What, in your opinion as a lawyer, was the legal effect of the deed from Fred Kleensang to Fred Kleensang?" To which the witness answered: "To break up the joint tenancy which he wanted to do." This witness and others testified extensively as to the events surrounding the execution of the deed.

In view of the liberal wording of our statute with respect to quiet title actions, we are of the opinion that the pleadings were sufficient to raise the question and the evidence indicates that it was considered by the court. Having determined that the trial court considered the effect of the deed, we turn to the issue here.

In discussing the issue of whether one joint tenant can unilaterally sever the joint tenancy by conveying to himself, we deem it advisable to set out some of the history of cotenancies, both under the common law and under the law of this state. When a tract of land is owned by two or more persons, the owners are known as cotenants. Under the common law, cotenancy was divided into three main categories: tenancy in common, joint tenancy, and tenancy by the entirety. The latter is a joint tenancy created by a grant to a husband and wife. The main characteristic of a joint tenancy is the right of survivorship. As soon as one joint tenant dies, his title automatically passes to the surviving joint tenant. Conversely, upon the death of a tenant in common, the decedent's interest passes to his heirs or devisees and not to the surviving tenant in common.

Joint tenancies, in common law, and tenancies by the entirety were similar as to the right of survivorship but differed in that only a joint tenant could sever tenancy by his unilateral act as an inter vivos transaction and thus destroy such right of survivorship. Under tenancies by the entirety, the act of both parties was required to sever the tenancy.

The common law rule that a joint tenancy must contain the four unities of time, title, interest, and possession still persists unless modified by statute. Or in other words, joint tenants have one and the same interest accruing by one and the same conveyance commencing at one and the same time and held by one and the same undivided possession. See, Flick Abstract & Titles 2d, Tenancies in Common and Joint Tenancies, § 461, p. 415; United States v. Jacobs, 306 U. S. 363, 59 S. Ct. 551, 83 L. Ed. 763.

To color match cases from different jurisdictions, it must first be determined whether they are true joint tenancies and that the common law is followed. For example, in Iowa the existence of a joint tenancy is determined by the intention of the parties

rather than the common law "four unities rule." In re Estate of Baker, 247 Iowa 1380, 78 N. W. 2d 863.

We have previously held that prior to the enactment of section 76-118, R. R. S. 1943, the attempted creation of a joint tenancy, where one or more of the unities were absent, resulted in a tenancy in common. See, Stuehm v. Mikulski, 139 Neb. 374, 297 N. W. 595; and Anson v. Murphy, 149 Neb. 716, 32 N. W. 2d 271.

It is fundamental that an existing estate in joint tenancy can be destroyed by the act of one joint tenant which is inconsistent with joint tenancy and such act has the effect of destroying a right of survivorship incidental to it. The creation as well as the continued existence of an estate in joint tenancy under the common law, which is recognized in this state, is subject to the right of the Legislature to modify, which it has done by section 76-118, R. R. S. 1943.

Any act of a joint tenant which destroys one or more of the coexisting unities operates as a severance and extinguishes the right of survivorship. See, White v. Ogier, 175 Neb. 883, 125 N. W. 2d 68; and Cofer v. Perkins, 199 Neb. 327, 258 N. W. 2d 807. A close reading of section 76-118, R. R. S. 1943, does not indicate any intention to permit severance by a conveyance from one joint tenant to himself, he being both the grantor and grantee. For a discussion of the law of severance as applied to joint tenancies, see "Panel Discussion" by Herman Ginsburg, Wilbur S. Aten, Robert G. Simmons, Jr., and John R. Fike, reported at 34 Neb. L. Rev. 280-301 (1954).

A transaction involving the transfer of title to real estate presupposes the participation of two or more parties. For every alienation there must be an alienor and an alienee; for every grant, a grantor and a grantee; and for every gift, a donor and a donee. The words "convey," "transfer," and similar words employed in conveyancing signify the

passing of title from one person to another. See Black's Law Dictionary 402 (4th Ed., 1951). To make a deed effective, the grantor is divested of and the grantee is vested with the title. The requisites of a deed purporting to grant an immediate estate in possession are that there be a grantor and a grantee and a thing granted. A person cannot convey or deliver to himself that which he already possesses. He cannot by deed convey an estate to himself or take an estate from himself. Deslauriers v. Senesac, 331 Ill. 437, 163 N. E. 327; 26 C. J. S., Deeds, § 13, p. 600.

At common law, livery of seisin was necessary to pass the title to real property and it was recognized that a person could not make livery of seisin to himself. Livery of seisin has been rendered unnecessary; but the muniments of title, namely the deed, must still be delivered. See Deslauriers v. Senesac, *supra*.

Here the cotenant, Fred Kleensang, attempted to sever the joint tenancy by a deed from himself as grantor to himself as grantee. We now hold that this act does not constitute a severance of the joint tenancy and that the right of survivorship at the time of the death of Fred Kleensang was in the plaintiff, Herbert Krause.

The decision of the District Court is reversed with instructions to enter judgment in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.